## 74299. MERRITT v. THE STATE.
### (358 SE2d 293)

BIRDSONG, Chief Judge.

Randy Merritt appeals his conviction for armed robbery. The evidence of the two victims, largely supported by the juvenile co-actor, showed the following: The victims are brothers, Shane and David Thompson. Shane had recently purchased a truck and wanted to install in it a stereo system. He learned from another boy the name of a person who could get him some amplifiers; this person was Dave, the juvenile co-actor. Shane called Dave several times asking if Dave could get him some "amps." Finally on December 29, 1985, Shane called Dave and the appellant Randy Merritt answered and identified himself as "Dave." Appellant told Shane he could sell him four amps for $200, and arranged to meet Shane later that evening at Dearborn Park in DeKalb County. Shane and his brother David, who also wanted an amplifier, determined to buy only two amps for $100, which amount David carried in his wallet. Shane and David drove with David's girl friend to the park about 7:00 p. m. Shortly, appellant and his accomplice Dave approached David's truck and Shane and David got out. When appellant asked the brothers if they had the money, they told appellant they had only $100 and wanted only two amps. Appellant and Dave then walked with the brothers, Shane and David, into the park where the amps supposedly were. The group stopped at some picnic tables, and appellant and Dave went up into the woods where appellant and Dave said the amps were hidden. A few minutes later they returned, and the brothers saw a gun in appellant's pants under his unzipped jacket. Appellant said: "We'll . . . do business this way," and stuck the gun at David Thompson's head and cocked the trigger. Appellant demanded the money; David removed his wallet and handed it to appellant who gave it to his accomplice Dave to look through. Appellant commanded Shane to give up his wallet to Dave. Appellant then ordered the brothers to sit and held the gun at David's head, evidently because David had struggled briefly and in appellant's view proposed the greatest threat. Dave searched the wallets and, discovering no more money than $100, threw the wallets back at the brothers. David Thompson begged appellant not to shoot him. Apparently chagrined to be cheated out of the anticipated full $200, appellant said: "You can't rush us like this,

and you can't rip us off," and he ordered the brothers to lie down, saying he could kill them if he wanted to. Shane and David lay face down, believing they were "dead" and would be killed for certain, but David kept trying to look back to see appellant still pointing the gun at him. Appellant said: "If you think I'm kidding . . .," and shot the gun. Shane felt the dirt fly up between him and his brother and believed his brother had been killed. He heard Dave say, "Let's go," and heard them run away; finally his brother David let Shane know he was not hurt, and the pair arose and fled. As they approached the truck, a shot rang out again but struck no one. David's girl friend sitting in the truck, saw the two run towards her under the street light, and saw a spark which she took to be a gunshot. The three drove to a store and called the police, giving them the telephone number where Shane had first called Dave. Arrests followed within a few hours.

Appellant attempted to show at trial that he engaged in this episode because a "gang" called Down By Law was after him threatening and intimidating him, thus "coercing" him to do this thing to get money to pay them for his own "protection." Appellant also attempted to show that not he, but Dave, conceived the idea and procured the gun; that he meant only to "scare" the two brothers into giving him and Dave their money, and only pointed it at David because he had given the most resistance. He further, by cross-examination of the victims, attempted to establish in defense of the crime that the victims had "never really lost anything" because they had gotten their money returned; that they could not ever have been really afraid because they kept looking back when appellant made them lie down; that the brothers should have suspected the illusory amps were probably stolen goods; that appellant had been really friendly to them until he discovered they did not have the full $200 and became upset; that appellant never really held either wallets or money for very long; and that appellant did not intend to shoot them but only to scare them and in truth appellant did not shoot them; and that he never actually touched David's head with the gun barrel but only held it near David's head. *Held:*

1. Appellant contends the evidence was insufficient to prove armed robbery and that the jury should have been allowed to consider robbery as a lesser offense. In support of this advocation that the jury could have, and should have, found robbery and not armed robbery, he states that he himself "never actually physically took anything from either victim, [and] never intended to hurt anyone, and . . . he never threatened anyone." We reject this proposition out of hand. The evidence shows without dispute, and even assuming appellant's own testimony to be true, that appellant extracted money from the victims with the use of a handgun. This is armed robbery, under

OCGA § 16-8-41. Appellant's argument on appeal that he did not commit "armed robbery" because he testified the money was handed over without his asking for it and because he shot near (and not at) David Thompson only after the money was taken and not before, is meaningless in point of law. Likewise we reject the urgings of appellant in this case that this crime, vicious at the very least in the degree of fear of imminent death imposed upon his victims, might be justified or defended by his need of money to protect himself from a "gang." The evidence clearly shows that appellant never disclosed to anyone, neither victims, accomplice, nor police, that he acted out of or even suffered fear of a gang; but even had this been true, it is not a defense to this crime.

2. Similarly, appellant's contention that he was entitled to a jury charge on abandonment of criminal enterprise under OCGA § 16-4-5, because he "didn't intend to take anything to begin with and didn't end up taking anything from Shane Thompson at the end of their time together before appellant ran away" is so devoid of merit in its mere statement that it need not be answered, particularly in view of appellant's own testimony that he needed money to combat threats of a "gang," he meant to extract it from the victims, and he used a handgun to do it and shot it near the victims as they lay on the ground, intending to frighten them.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED MAY 29, 1987.

*William T. Hankins III*, for appellant.
*Robert E. Wilson, District Attorney, J. Michael McDaniel, Fran W. Shoenthal, Assistant District Attorneys*, for appellee.